**IN THE COURT OF APPEALS OF IOWA**

No. 22-0416
Filed May 11, 2022

**IN THE INTEREST OF J.P. and M.P.,**
**Minor Children,**

**B.P., Father,**
    Appellant,

**S.H., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Boone County, James B. Malloy,

District Associate Judge.

A mother and father separately appeal the termination of their parental

rights to two children. **AFFIRMED ON BOTH APPEALS.**

Ashley Beisch (until withdrawal) of Johnson Law Office, Ogden, and

Benjamin Bragg, Clive, for appellant father.

Nathan Hostetter of Hostetter Law Office, Ames, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

Kelsey Knight of Carr Law Firm, P.L.C., Des Moines, attorney and guardian

ad litem for minor children.

Considered by May, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A mother appeals the termination of her parental rights to two children, J.P. and M.P.  J.P.'s father separately appeals the termination of his parental rights to J.P.  Both the mother and father[1] contend that the statutory grounds for termination were not met, termination was not in the children's best interests, and an exception should apply.  Upon our de novo review, we affirm termination of each parties' parental rights.

### I.  Background Facts and Proceedings.

J.P. and M.P. became involved with the Iowa Department of Human Services (DHS) in August 2019 at the ages of one and four years old respectively. At that time, a removal order was entered due to the mother's use of methamphetamine while the children were under her care.  The DHS recommended treatment, but the mother did not participate until she began outpatient services in March 2020.  The father also tested positive for methamphetamine in August 2019 and refused to engage in substance-abuse treatment.  He maintained that he would not participate until a paternity test came back proving he was J.P.'s father.  He did receive a substance-abuse evaluation in November 2019, which recommended outpatient treatment.  He told the DHS caseworker in December that he did not need services, later agreed to outpatient treatment, and ultimately failed to follow through.

The two children were adjudicated as children in need of assistance in February 2020.  The parents failed to appear for a dispositional hearing in March,

---

[1] The father of M.P. consented to termination and does not appeal.  As such, the use of "father" herein shall refer to the father of J.P.

and the children remained in foster care. The mother appeared for a permanency hearing in August, and after the DHS received good reports from her ongoing treatment, custody was returned to her in October 2020 by agreement of the parties.

Custody remained with the mother after a review hearing in January 2021. However, a dispositional modification hearing was held less than one month later due to allegations that the mother was using and selling methamphetamine with her new boyfriend. The mother did not appear for the hearing and was not cooperating with the DHS or its drug screens at that time. Consequently, the children were removed from the mother's custody and placed with the father's paramour. Another modification took place in March 2021 due to the father's positive drug screen for methamphetamine. He claimed the result was from secondary interactions rather than his own drug use, but the drug testing lab confirmed for the DHS that neither explanation the father offered would lead to the positive result. His paramour indicated she did not want to keep the children in her care, so they were subsequently placed in family foster care at the beginning of April.

In April, the mother admitted using marijuana on a regular basis but denied using methamphetamine. She had a drug patch put on that month but failed to return to have it tested. She did not comply with requested drug testing in May. However, the mother obtained a successful discharge from outpatient treatment on June 1. The summary report indicates that she abstained from all substances for six months of time. She failed to comply with drug testing on two occasions in

August even though the DHS offered transportation for the appointments. The father tested positive for methamphetamine in July.

At a permanency hearing in September, the court directed the State to file a termination petition. A petition to terminate parental rights was filed in October, and a hearing was held in November 2021. At the time of the termination hearing, M.P. was six and J.P. was three years of age. After the court terminated their parental rights, the mother and father each filed timely appeals.

## II. Review.

Our review of termination proceedings is de novo. *See In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (internal citation omitted). Though not binding, we give weight to the juvenile court's fact findings. *See* Iowa R. App. P. 6.904(3)(g); *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010).

## III. Discussion.

Iowa courts use a three-step analysis to review the termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). Those steps include whether: (1) grounds for termination have been established, (2) termination is in the children's best interests, and (3) we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. We address each step in turn, bearing in mind that the children's best interests are our primary concern on review. *In re*

*J.H.*, 952 N.W.2d 157, 166 (Iowa 2020). While the juvenile court found the State proved two grounds for terminating each parent's rights by clear and convincing evidence, we may affirm if the record supports termination on any one ground. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

### A. Grounds for Termination of Mother's Rights.

The juvenile court terminated the mother's parental rights to J.P. pursuant to paragraphs (e) and (h) of Iowa Code subsection 232.116(1) (2021) and to M.P. pursuant to paragraphs (e) and (f) of the same subsection. We confine our analysis to paragraphs (h) and (f). With respect to both children, only the fourth element of the applicable paragraph is in dispute: whether the child could be returned to the parent's care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4), (h)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean "at the time of the termination hearing").

We agree with the juvenile court that neither M.P. nor J.P. could be returned to her mother's care at the time of the termination hearing. The mother contends that care could be returned because she has stable, suitable housing, is employed, and completed substance-abuse treatment. The mother moved a couple of times but did have housing and was employed cleaning rental properties for her boyfriend's grandmother. However, the true success of her substance-abuse treatment is unclear. As the juvenile court observed, the discharge report does not reflect that many of the contacts were not in person due to COVID-19. It does not indicate how often the mother attended treatment or how the mother's abstinence was verified. It does not account for the mother's apparent relapse when the

children were removed in January 2021 or acknowledge the DHS drug tests with which the mother failed to comply.

Upon our review, we find the mother's drug use is an unresolved issue preventing return of the children. "[W]e presume the missed tests would have been positive for illegal substances." *In re J.D.*, No. 21-0391, 2021 WL 3379037, at *1 (Iowa Ct. App. Aug. 4, 2021); *see also In re J.K. and J.K.*, 495 N.W.2d 108, 112 (Iowa 1993) (terminating parental rights where mother demonstrated unresolved drug dependency and declining to take her "word that she stayed away from drugs"). The mother claims transportation issues and short notice were the reasons behind her noncompliance with the DHS drug testing. However, transportation services were offered to her, and short notice is purposeful for random drug testing. The mother likewise never followed through on the DHS recommendations for mental-health services during the two years of this case, but an initial evaluation was scheduled for one week after the termination hearing. There is also a significant history of domestic violence for the mother with incidents involving the father and at least two other individuals during the case.

Moreover, the mother has failed to demonstrate an ability to provide adequate care for the children. At the time of the termination hearing, the children had been removed from their mother's care for twenty-four of the last twenty-seven months, and she had not progressed beyond fully supervised visits. "Without this necessary progression [from supervised to unsupervised visits], we cannot say the children could have returned to the mother's care." *See In re C.N.*, No. 19-1961, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020). Her visits were inconsistent, and she was unsuccessfully discharged from Safe Care in March 2021 due to

noncompliance. She did not take an active role in the children's healthcare needs, as she did not appear for or inquire about their appointments. M.P. suffers from a debilitating condition known as torticollis, which affects her neck and mobility. The mother was not following through on her treatment needs prior to removal, and now she will likely need surgery. M.P. also had three teeth removed due to lack of care and infection. J.P. has specialized healthcare needs as well, as she now wears braces on her feet to keep her from walking on her tiptoes. The mother does not have a driver's license to follow through on transportation for her daughters' healthcare needs.

Based on our review of the record, we find the children could not be returned to the mother's care at the time of the hearing. We conclude there is clear and convincing that grounds for termination of the mother's parental rights under Iowa Code section 232.116(1)(f) and (h) have been satisfied for M.P. and J.P., respectively.

### B. Grounds for Termination of Father's Rights.

The juvenile court terminated the father's parental rights to J.P. pursuant to paragraphs (e) and (h) of Iowa Code subsection 232.116(1). We confine our analysis to paragraph (h). Again, only the fourth element is in dispute: whether the child could be returned to the parent's care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4); *D.W.*, 791 N.W.2d at 707. We agree with the juvenile court that J.P. could not be returned to her father's care at that time.

The father has failed to reckon with his shortcomings in both his personal life and that of his daughter. He has continued to test positive for methamphetamine and has not followed through on substance-abuse treatment.

He did attend a substance-abuse evaluation in September 2021 for which the summary letter indicated, "He did not provide any direct answers and did his best to avoid taking any responsibility for his actions." The father has also demonstrated issues with domestic assault and failed to complete the Iowa Domestic Abuse Program classes. He has likewise failed to meaningfully participate in mental-health services. He appeared for a mental-health evaluation in February 2021 as ordered through his probation, but the appointment ended early due to his erratic and argumentative behavior. He returned to complete the evaluation in April, but he denied every symptom that would indicate a need for services.

The father has also failed to set up requested mental-health treatment for his daughter. He has attended fewer than half of the visits offered to him during the case and has not attended any medical appointments. He also has no driver's license and lacks stable housing, having been in and out of jail and lived generally with family and friends. He has not progressed beyond fully-supervised visits. While the father argues he has shown meaningful signs of progress, we find he has not demonstrated an ability to provide adequate care and has shown an overall unwillingness to address his substance-abuse issues. We conclude his daughter could not be returned at the time of the termination hearing and a statutory ground for termination is therefore satisfied.

### C. Children's Best Interests.

Both parents argue termination is not in the children's best interests. To evaluate this issue, "the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child,

and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). In this case, we agree with the juvenile court that termination is in M.P. and J.P.'s best interests. They are in a stable placement with their foster mother, who they refer to as mom and is actively addressing their healthcare needs. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting a child's favorable integration into a foster placement supports finding termination is in the child's best interests).

Neither parent has been able to demonstrate a meaningful period of sobriety during the course of this case. In light of their history, we are not inclined to believe that either of the parent's behavior will change in a reasonable time. *See A.B.*, 815 N.W.2d at 778 ("Insight for the determination of the child's long-range best interests can be gleaned from evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing." (citation omitted)). Each parent's refusal to accept responsibility for their deficiencies—demonstrated by noncompliance with drug testing and other services—further supports our conclusion that termination is in the children's best interests. *See In re A.G.*, No. 18-1161, 2018 WL 6131920, at *3 (Iowa Ct. App. Nov. 21, 2018) (finding termination is in the best interest of a child when the parent has "refused to acknowledge or address the concerns giving rise to removal"). Accordingly, we find termination of both parents' rights is in the best interests of the children.

  *D. Exceptions to Termination.*

Each parent asserts that the detriment termination would cause to the children warrants an exercise of our discretion. *See* Iowa Code § 232.116(3)(c)

(providing a discretionary exception to termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). The parent bears the burden to prove the applicability of an exception to termination. *A.S.*, 906 N.W.2d at 476. Even if grounds for an exception are substantiated, we retain discretion as to whether termination should be halted on that basis. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).

The mother argues summarily that the children have a bond with her, she appropriately parents during visits, and she loves her children. Despite the mother's love for her children, "our consideration must center on whether the child will be disadvantaged by termination." *D.W.*, 791 N.W.2d at 709. The father similarly argues that his daughter is bonded with him and that he showed positive parenting skills at visits. We do not find the parent-child relationship is so strong that it outweighs the need for termination in either parent's case. *See In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021) (finding the existence of a bond is insufficient when parents have "failed to provide the clear and convincing evidence necessary to show that, on balance, that bond makes termination more detrimental than not"). Accordingly, we find this exception will not save the mother's or father's parental rights.

### IV. Disposition.

Having found the statutory grounds satisfied for each parent, the best interests of the children considered, and a lack of applicable exceptions, we affirm termination of the mother's and father's parental rights.

**AFFIRMED ON BOTH APPEALS.**